UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RMLB LLC and RELDAN METALS, INC.,

                                        Plaintiffs,                    **MEMORANDUM AND ORDER**

                        v.

CPM MANAGEMENT LLC                                              20-CV-2786 (LDH) (PK)
d/b/a CPM GROUP,

                                        Defendant.

L᷍ASHANN D᷍EARCY HALL, United States District Judge:

## BACKGROUND[1]

RMLB LLC and Reldan Metals, Inc. ("Plaintiffs") entered into an agreement with CPM

Management LLC ("Defendant") whereby Defendant was to assist in transferring Plaintiffs'

precious metals to a new depository, and to manage investments of those metals and any related

securities.  (First Am. Compl. ("FAC") ¶ 21, ECF No. 11.)  Defendant was not permitted to take

complete ownership or control over the precious metals.  (*Id.* ¶ 23.)

On July 22, 2018, Defendant advised Plaintiffs that it had begun the process of moving

Plaintiffs' precious metals from its current depository, ScotiaBank, to a "London pool account."

(*Id.* ¶ 24.)  After discussing account identification options, on August 9, 2018, Defendant advised

Plaintiffs that:

> the best approach for identifying your accounts with any and all counterparts
> (depositories, trading companies, brokers, etc.) is for the accounts to be identified
> as CPM accounts, with the counterparts having a letter from CPM outlining the
> procedures in which the ultimate owner may step forward and claim the accounts,
> and/or specify that CPM no longer has authority over the accounts.  You get a letter
> from CPM outlining the procedures you would use in such circumstances.

---

[1] The following facts are taken from Plaintiffs' First Amended Complaint (ECF No. 11) and are assumed
to be true for the purposes of this memorandum and order.

(*Id.* ¶ 33.)  Defendant confirmed it would move forward with that approach the same day.  (*Id.* ¶ 34.)

In November 2018, Plaintiffs requested holding statements regarding the precious metals, but Defendant did not provide them.  (*Id.* ¶ 47.)  On December 20, 2018, Plaintiffs again requested the holding statements.  (*Id.* ¶ 49.)  Plaintiffs received the statements the following day.  (*Id.* ¶ 50.)  Upon review of the statements, Plaintiffs learned that its Delaware Depository Services Company ("DDSC") account was in Defendant's name only.  (*Id.* ¶ 58.)  On December 27, 2018, Plaintiffs learned that Defendant had taken possession and control over the precious metals.  (FAC ¶¶ 58–60.)  And although Defendant represented that it would immediately provide a letter to the depository explaining the procedure for the ultimate owner claiming the accounts, Defendant never did so.  (*Id.* ¶¶ 36–37.)  In fact, Defendant did not provide that letter until January 7, 2019, and only at Plaintiffs' expense.  (*Id.* ¶¶ 61–65.)  Plaintiffs incurred further expenses because their legal counsel and accountant had to demand a letter from Defendant confirming transfer of the precious metals to Plaintiffs' account.  (*Id.* ¶ 65.)

Plaintiffs learned that from October 15, 2018, through January 7, 2019, they had no control or possession of their precious metals.  (*Id.* ¶ 66.)  This, according to Plaintiffs, "consisted of an extreme departure from the standards of ordinary care."  (*Id.* ¶ 67.)  According to the Complaint, Defendant's actions "created remarkable exposure and potential liability for [P]laintiffs as the nearly three months when [Defendant] had complete control of [P]laintiffs' [precious metals], such assets could have been easily taken away, sold, seized, purchased, traded or lost by CPM Management leaving [P]laintiffs with no recourse."  (*Id.* ¶ 68.)

On February 13, 2019, Plaintiffs learned that their precious metals had not been deposited in London pool accounts as Defendant previously represented.  (*Id.* ¶¶ 75–79.)  Such accounts

were favorable for Plaintiffs because they "allowed [P]laintiffs to easily move and transfer its [precious metals] between institutions in a quick manner and with limited expense." (*Id.* ¶ 78.) According to Plaintiffs, Defendant's failure "prevented [P]laintiffs from freely moving the [precious metals] back to a London pool account as any such transfer will incur fees." (*Id.*)

On June 23, 2020, Plaintiffs filed the original complaint seeking recission of their contract with Defendant pursuant to The Investment Advisors Act ("IAA"). (*See* Compl., ECF No. 1.)  Plaintiffs amended their complaint on October 13, 2020, to include a fraud claim pursuant to The Commodity Exchange Act ("CEA").  (*See* FAC.)  Among other non-pecuniary requests, Plaintiffs sought to void and rescind their agreement with Defendant, and "[a]n [o]rder that [Defendant] violated 7 U.S.C. § 6o(a)(1)(A)(B)." (*Id.*)

On March 1, 2022, the Court issued an Order to Show Cause, directing Plaintiffs to show cause why their IAA claim should not be dismissed as time-barred and why their CEA claim should not be dismissed for failure to plead the threshold requirements of Section 22, which requires a showing of actual damages resulting from specific transactions.

## DISCUSSION

"[A] district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013).  Moreover, as the Second Circuit noted in *Leonhard v. United States*: "There appears to be no reason why the same rule should not apply to a dismissal on statute of limitations grounds, at least where, as here, the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." 633 F.2d 599, 609 n.11 (2d Cir. 1980).

### I.    Plaintiffs' IAA Claim

3

Section 80b-6 of the IAA prohibits an "investment adviser," from employing "any device, scheme, or artifice to defraud any client or prospective client;" engaging "in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;" or engaging "in any act, practice, or course of business which is fraudulent, deceptive, or manipulative."  15 U.S.C. § 80b-6.  The IAA provides for a limited private right of action for recission of an investment adviser contract.  *See Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979) ("[T]here exists a limited private remedy under the Investment Advisers Act of 1940 to void an investment advisors contract, but [] the Act confers no other private causes of action, legal or equitable").

Under the IAA, a private right of action for recission must be commenced within one year of the discovery of the claim, but in no event shall any such action be brought more than three years after the date of the wrong.  *See Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039 (2d Cir. 1992) (holding that the appropriate limitations period to apply to an IAA action for rescission is either one year from the wrong or one year from the discovery of the wrong, but not more than three years from the wrong).  Plaintiffs filed their initial complaint on June 23, 2020, alleging a wrong that ended by January 7, 2019 (February 13, 2019 at the latest). (FAC ¶¶ 66, 79.)  Plaintiffs' IAA claim is therefore untimely.

In an effort to avoid dismissal, Plaintiffs argue that the Court should apply the continuing harm theory to avoid the statute of limitations.  Specifically, Plaintiffs argue that the statute of limitations should be tolled because they only discovered the "true extent" of the harm on January 14, 2020, the date on which Defendant sent a final invoice to Plaintiffs for services provided throughout 2019.  (Pls.' Order to Show Cause Resp. ("OTSC Resp.") at 2, ECF No. 17,

(citing FAC ¶ 86).)   The Court disagrees.  More pointedly, the continuing wrong theory is simply inapplicable to this case.

The continuing wrong theory "applies when the defendant's conduct causes plaintiff to sustain damages after the time when the statute of limitations would have expired if it commenced at the time of defendant's first act."  *Kahn*, 970 F.2d at 1039.  In that circumstance, "the claim accrues each time the plaintiff sustains damages."  *Id.*  Here, Plaintiffs argue that the "true extent of CPM Management's improper actions were only initially coming to light" as of December 27, 2019.  (OTSC Resp. at 2.)  Okay.  But the complaint makes plain that by January 5, 2019, Plaintiffs had been advised that the precious metals ("PCM") had been improperly placed in a pool controlled exclusively by CPM.  (FAC ¶ 62.)  And, just two days later, Plaintiffs had received the necessary documentation to gain control of its PCM.  (*Id.* ¶ 63.)  Tellingly, Plaintiffs themselves, cabin Defendant's wrongdoing as occurring between October 15, 2018, and January 7, 2019.[2]  (*Id.* ¶ 66.)  Of course, the complaint was filed more than a year later, on June 23, 2020.  (*See generally* Compl.)

In seeming reliance on *Baker v. F&F Invest.*, 420 F.2d 1191 (7th Cir. 1970), Plaintiffs argue that they continued to incur damages by way of invoices submitted by Defendants through January 14, 2020, for "investment activities."  (OTSC Resp. at 2.)  Even if true, *Kahn v. Kohlberg*, 970 F.2d 1030, 1041 (2d Cir. 1992), teaches that such ongoing investment advice does not trigger the application of the continuing wrong theory.  That is, the continuing wrong theory

---

[2] Plaintiffs also allege that it was not until February 2019 that it learned that the PCM had not been placed in a London pool account.  (FAC ¶ 79.)  However, by January 5, 2019, Plaintiffs had already gained control over the accounts.  (FAC ¶¶ 63, 65–66.)  Moreover, Plaintiffs failed altogether to allege any harm that resulted from being placed in a London pool account.  For example, although Plaintiffs allege that the failure of Defendant to place the PCM in a London pool account prevented Plaintiff from freely moving the PCM back to a London pool account because such transfers would incur fees, Plaintiffs do not allege that they made any such transfer and were assessed any fees as a result.  (FAC ¶ 78.)

"does not apply in this case since defendants entered into one discrete contract with plaintiffs . . ." *Kahn*, 970 F.2d at 1041.  Performance under the contract merely affects damages and does not give rise to a new cause of action.[3]  (*Id.*)

The alleged wrongful conduct set forth in the complaint relates to the storage of the precious metals and the statements regarding London pool accounts.  By Plaintiffs' own pleading, Plaintiffs learned of these wrongs in January 2019 (February 2019 at the latest), and their claims are therefore barred by the statute of limitations.  (FAC. ¶¶ 61, 79.)  Plaintiffs' IAA claim is dismissed.

## II.  Plaintiffs' CEA Claim

Plaintiffs additionally allege that Defendant violated section 4o(1) (codified at 7 U.S.C. § 6o(1)(A) and (B)) of the CEA.  Section 4o(1), provides, in pertinent part:

> (1) It shall be unlawful for any commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

7 U.S.C. § 6o(1)(A)–(B).

---

[3] Plaintiffs also argue that, in the antitrust context, the statute of limitations begins to run when the Plaintiffs sustain injury and not when Defendant acts, so that rule should be applied here.  (Pls.' OTSC Resp. at 2.)  But, the complaint does not allege an antitrust violation.  The Second Circuit determined that the most appropriate statute of limitations for an implied action for recission under the IAA is the one-year statute of limitations applicable to many actions under the 1933 Securities Exchange Act and 1934 Securities Act—not the statutes of limitations applicable to antitrust claims.  See *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1033–39 (2d Cir. 1992).

"A plaintiff must satisfy the threshold requirements of Section 22 of the CEA before even reaching the merits of a Section 4o fraud claim." *MBC Fin. Servs. Ltd. v. Boston Merchant Fin., Ltd.*, No. 15-CV-275, 2016 WL 5946709, at *11 (S.D.N.Y. Oct. 4, 2016); *see also Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 174 (S.D.N.Y. 2018) ("[T]o assert a CEA claim, a private plaintiff must meet the requirements of Section 22."), *adhered to on denial of reconsideration*, No. 16-CV-6496, 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018).[4]

> Section 22 [of the] CEA creates a private right of action for litigants limited to four circumstances: a plaintiff must either have (A) received trading advice from Defendant[] for a fee; (B) traded through Defendant[] or deposited money with Defendant[] in connection with a commodities or swap trade; (C) purchased from or sold to Defendant[] or placed an order for purchase or sale of a commodity or swap through them; or (D) engaged in certain market manipulation activities in connection with the purchase or sale of a commodity contract or swap.

*MBC Fin. Servs. Ltd.*, 2016 WL 5946709 at *10; *see also Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 259 (2d Cir. 2006) (holding that Section 22 of the CEA "enumerates the only circumstances under which a private litigant may assert a private right of action for violations of the CEA").

Here, there is no allegation establishing "actual damages resulting from …recei[pt of] trading advice … for a fee." 7 U.S.C. § 25(a)(1)(A).  Plaintiffs' allegations of actual damages are limited to the costs incurred in their efforts to retake ownership of their PCM, but this cost is a step removed from the injury they suffered—which was the loss of their precious metals for three months.  (FAC ¶¶ 64–65.)  Had Plaintiffs alleged that they never recovered their PCM or that they were tricked into selling their PCM below value, they may have sufficiently alleged

---

[4] "Decisions and authorities discussing the private right of action created under the Commodity Exchange Act often refer to 'Section 22' even when citing to 'Section 25.'  Section 22 is the section number assigned in the actual text of the CEA itself, whereas Section 25 is the number designated to that section within the United States Code.  For the purposes of this opinion, the Court uses the conventional reference to "Section 22" when discussing the United States Code cite (i.e., § 25)." *Braman v. The CME Grp., Inc.*, 149 F. Supp. 3d 874, 885 n.3 (N.D. Ill. 2015).

actual damages.  *See, e.g.*, *Jing v. Sun*, No. 21-CV-2350, 2022 WL 1505950, at **19–20 (E.D.N.Y. Jan. 4, 2022) (measuring actual damages that resulted from fraudulent commodities transaction based on money paid for commodity); *Kremers v. Joseph Glenn Commodities, LLC*, NO. 12-cv-80510, 2013 WL 12080926, at **3–4 (S.D. Fla. Feb. 26, 2013) (finding that 7 U.S.C. §25 provides a private right of action for a plaintiff who entrusted a commodities trader with $100,000 and received only $1,100.51 upon discovering misuse of his funds).  But the costs incurred in Plaintiffs' effort to retake the PCM are better classified as incidental damages, which is insufficient to establish standing to bring suit.  *See, e.g.,* N.Y. U.C.C. § 2-715(1) ("Incidental damages resulting from the seller's breach include expenses … in connection with effecting cover and any other reasonable expense incident to … [the] breach.); *see also LG Funding, LLC v. Johnson & Son Locksmith, Inc.*, 170 A.D.3d 1153, 1154 (2d Dep't 2019) (explaining that "[A]ttorney's fees are incidents of litigation" and are not a part of a compensatory damage award).  In other words, Plaintiffs fail to allege the type of damage necessary under the terms of the CEA.

Plaintiffs argue that they require discovery to determine the damages resulting from their three-month dispossession, which is insufficient to confer CEA standing.  (OTSC Resp. at 3.)  The amended complaint provides no basis for the Court to infer that Plaintiffs could have suffered any loss as a result of the three months of dispossession.  Indeed, there is no allegation that even suggests the PCM lost value.

Plaintiffs' argument that courts have not limited the actual damages requirement to exclude their injury misses the mark.  (Pls.' OTSC Reply at 1-2, ECF No. 19.)  Plaintiffs rely on *Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 669 F. Supp. 1244, 1265–66 (S.D.N.Y. 1987) to argue that the only damages that have been excluded from the CEA are

punitive damages. (*Id.*) Maybe. But, Plaintiffs have not proffered a single case where the sort of damages alleged here, standing alone, are sufficient to confer CEA standing. This is not surprising, given that the CEA's private right of action "limit[s] claims to those of a plaintiff *who actually traded* in the commodities market." *Loginovskaya v. Batratchenko*, 936 F. Supp. 2d 357, 365 (S.D.N.Y. 2013) (citing *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 260 (2d Cir. 2006), *aff'd*, 764 F.3d 266 (2d Cir. 2014)) (emphasis added).

## CONCLUSION

The Amended Complaint is DISMISSED. Plaintiffs have failed to show cause why their IAA claim should not be dismissed as time barred and why their CEA claim should not be dismissed for failure to plead the threshold requirements of Section 22, particularly actual damages.

SO ORDERED:

Dated: Brooklyn, New York
        September 1, 2023

/s/ LDH_____
LASHANN DEARCY HALL
United States District Judge